Louis Pleshet, for appellant.

Louis Bialostosky (William F. Clare, on the brief), for respondents.

JENKS, J. The plaintiff complained that under a written contract he did certain work upon the realty of the defendants and furnished materials thereupon, that a certain sum therefor became due, that he filed a mechanic's lien therefor, and that the defendant and the other defendant named in this action as surety bonded the lien. He demanded judgment against the owner of the property for the said sum of money, that the lien be declared a valid lien against the realty until discharged by the payment of the judgment, that the surety be declared liable, and that he have such other and further relief as might be just and proper. The defendant demurred, on the ground that it appeared on the face of the complaint that the court did not have jurisdiction. That demurrer was sustained, with leave to plead over, but in case of failure the defendants should have judgment absolute. The plaintiff did not plead over, and judgment absolute was rendered.

This court is committed to a conclusion contrary to that of the learned Municipal Court. Eadie v. Waldron, 64 App. Div. 424, 72 N. Y. Supp. 233. We may surmise that our decision was not called to the attention of the learned court, inasmuch as it does not appear upon the points of either of the defendants upon this appeal.

Judgment reversed, and new trial ordered; costs to abide the event. All concur.

---

(64 Misc. Rep. 425.)

### In re CURTIS et al.

(Surrogate's Court, Nassau County. August, 1909.)

WILLS (§ 531*)—CONSTRUCTION—DISTRIBUTION PER STIRPES OR PER CAPITA.

     Testator left his residuary estate to the heirs of his three sisters, one-third thereof to the heirs of each, "to be divided among them per capita as well as per stirpes, equally, and in all respects, share and share alike." *Held* that, where the heirs of one of the sisters consisted of a daughter and seven children of a deceased daughter, the distribution among them was not per capita, but the surviving daughter would take one-half of her mother's share, and the other half would be divided per capita among the children of the deceased daughter.

     [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1143, 1148, 1149; Dec. Dig. § 531.*]

In the matter of the judicial settlement of the account of William Edmond Curtis and others, executors of John Ordronaux, deceased. Decree of distribution rendered.

Payne & Scudder (Edward T. Payne, of counsel), for executors.

Foster & Foster (Edgar P. Foster, of counsel), for Mary Molau Marcell.

Augustus N. Hand, for Kingman legatees.

JACKSON, S. The only question upon this accounting arises in respect to the interpretation of the residuary clause of the will. It is contained in "clause 38" of the will, and is as follows:

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"All the residue and remainder òf my estate of whatever description and wherever situated, excepting my Bed-Room and Library furniture which I hereby donate to Mrs. Deborah I. Simonson, I give and bequeath as follows, to wit:

"One Third of such Residue I give and bequeath to the' heirs of my sister Eliza Servatius; One Third of such Residue I give and bequeath to the heirs of my sister Clara Molau, and One Third to the heirs of my sister Florine J. Bringues, to be divided among them per capita as well as per stirpes, equally, and in all respects, share and share alike."

The residuary estate now amounts to over $100,000. Eliza Servatius died prior to the testator, and her heirs were a son, Louis A. Servatius, and a daughter, Clara De Salignac. Clara De Salignac died intestate after the testator, and the administratrix of her estate is her daughter, Mary C. De Salignac. The one-third of the residuary estate given to the heirs of Eliza Servatius is, therefore, vested in Louis A. Servatius and Mary C. De Salignac as administratrix of the estate of Clara De Salignac, deceased, in equal shares. Florine J. Bringues survived the testator, and died July 12, 1908, and her sole heir was her daughter, Mrs. Lillie Judik. The one-third of the residuary estate given to the heirs of Florine J. Bringues is, therefore, vested in Mrs. Lillie Judik. Clara Molau died many years prior to the testator, and her heirs at the time of his death were a daughter, Mary Molau Marcell, and the following seven children of her deceased daughter, Clara Molau Kingman, to wit: William L. Kingman, Charles Molau Kingman, Le Roy Kingman, Henry E. Kingman, Oliver Kingman, Wyatt Kingman, and Miriam Kingman. The limits prescribed by the testator himself in his will for the devolution of this property are one-third "to the heirs of my sister Eliza Servatius," one-third "to the heirs of my sister Clara Molau," and one-third "to the heirs of my sister" Florine J. Bringues. There is no question as to the disposition of the two-thirds of the residue given in the will to the heirs of Eliza Servatius and the heirs of Florine J. Bringues. The difficulty arises over the division of the residuary third given to the heirs of Clara Molau.

Let us first consider how this residue would pass under the statute and the decisions if the testator had not added the phrase "to be divided," etc. A bequest to heirs, without any qualifying words, such as "equally," "per capita" or "per stirpes," or "share and share alike," is merely an indication of an intent that the statute which defines who the heirs are should be followed. Under the statute, when we have persons of unequal degrees of kinship to the decedent, they take per stirpes. In the event supposed, Mrs. Marcell would have one-sixth of the residue, and each of the Kingman children one forty-second. If the balance of the sentence is so contradictory as to be meaningless, it must be disregarded; and then the statute will so divide this one-third of the residue. If any deviation was intended to be made by the testator from the order which the statute fixes, we must find it in the words of the will, viewed in the light of the circumstances surrounding the testator.

What was his intent? What did he have in mind when he penned the residuary clause? He was a very eminent lawyer, and certainly knew the meaning of the words "per capita" and "per stirpes," which

he used in this residuary clause. He had by very clear and explicit language disposed of a large part of his large estate, about $260,000, in the preceding paragraphs, when he added the residuary clause. With a large estate, and having made many specific bequests, he probably had in mind the fluctuations that periodically occur in the values of estates and property of all kinds. With this in mind, he had not specifically disposed of all his estate; and in directing the disposition of the residue, of uncertain value, he undoubtedly intended to indicate to whom it should go in any possible event, so that he should die intestate as to none of it.

It is probably for this reason that he wrote that one-third should go "to the heirs" of my sister Eliza Servatius, one-third "to the heirs" of my sister Clara Molau, and one-third "to the heirs" of my sister Florine J. Bringues. The word "heirs" had a certain meaning. Unless the families of these three sisters ceased to exist, there would still be heirs to take the residuary estate; and if the three families became extinct, still there would be heirs whom the statute would point out. It will be noted, also, that Mrs. Bringues was still alive when the will was written, and even survived the testator, and also that the sisters' heirs, and not his heirs, were named in this clause. It seems probable, therefore, that the testator intended at least to provide against a partial intestacy.

It is not open to question, either, that within the three branches of the family represented by his sisters he intended his residuary estate to remain. The question at issue is: In what proportion did he intend to divide this residue? He gives one-third to each of the three branches represented by each of the three sisters, or her heirs. So far, his intent is plainly expressed. But then he adds:

"To be divided among them per capita, as well as per stirpes, equally, and in all respects share and share alike."

How can this direction be followed explicitly in making distribution among the heirs of Clara Molau? She left one daughter, Mrs. Marcell, and also seven grandchildren, the children of a deceased daughter, Clara Molau Kingman. This situation may or may not have been known to the testator. It appears only that his sister Clara Molau had died many years before the testator, and that only Mrs. Marcell and Miriam Kingman are given legacies in the will. If the testator had directed this one-third of the residue of the estate to be divided among Clara Molau's heirs per capita, or had directed the division per stirpes, there could be no question remaining. But he directs the division to be "among them per capita, as well as per stirpes, equally, and in all respects, share and share alike."

The Kingman grandchildren contend that this residuary clause of the will plainly requires a per capita division among the heirs of Clara Molau. I think not. The testator had plainly indicated a division of the residuary estate into three equal parts, one to go to each of the three designated branches of the family. This was a per stirpes division, for Mrs. Bringues survived the testator, and both when the will was written and at the time of his death she had only one heir, Mrs. Judik. The testator must have been fully acquainted with this branch

·of the family, for elsewhere in the will he makes provision for both Mrs. Bringues and Mrs. Judik. There was no need of adding a direction for either a per stirpes or a per capita division, when he divided the residuary estate into thirds. The testator had already sufficiently indicated the division. It must be that, when he directed how the thirds should be subdivided, he intended to apply to the subdivision the words under examination. If we attempt to apply them to the primary division into thirds, we at once extend the difficulty to that division; and the testator's language is so plain, and his scheme and his meaning so apparent, that none of the parties urges such an extension.

In their argument the Kingman legatees suggest that the words "as well as per stirpes" evidently refer to something which has gone before; that the division of the residuary estate into equal thirds allotted to the heirs of the three sisters is a per stirpes division, and is evidently what the testator referred to; that the words should be regarded as referring to the primary division only, and should not be held to outweigh the direction three times reiterated in the words "per capita," "equally," and "share and share alike." But, apparently and grammatically, "as well as per stirpes" modifies "divided." If the testator had intended a per capita division, would he not have said so? The words "per capita and not per stirpes" we may assume were familiar to him; and, if he intended what they mean, would he not have used them? The mere fact that he did not, indicates that he had something else in mind when he used the words in question.

Limiting the application of the words in question to the subdivision of each third, how can there be a division of the third of the residuary estate given to the heirs of Clara Molau, both per capita and per stirpes? Only by first dividing the third per stirpes between Mrs. Marcell and the heirs of Mrs. Kingman, and then subdividing one-sixth among the Kingman children per capita. This allots to Mrs. Marcell one-sixth of the residuary estate, and to each of the Kingmans one forty-second thereof. This is also the division which the law now prescribes in case of intestacy. Nor do I find anywhere in the will anything which shows a different intention.

It seems to me that this is the only solution which will give meaning to all the words used; and, if we disregard entirely the phrase which causes this confusion as contradictory and meaningless, the law works the same result. The decree should provide for distribution of the residuary estate as follows: One-sixth to Mrs. Marcell, and one forty-second thereof to each of the Kingman legatees.

Decreed accordingly.